IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MARIO CASTRO, et al.,                  :

    Plaintiffs,                    :

v.                                     :          Civil Action No. GLR-16-1276

CORDOBA ENTERPRISES, LLC, et al.,      :

    Defendants.                    :

## **MEMORANDUM OPINION**

THIS MATTER is before the Court on Defendants Peter Osborne ("Peter") and Timothy Osborne's ("Timothy") (collectively, "the Osbornes") Motion for Partial Summary Judgment (ECF No. 38), Plaintiffs Mario Castro ("Mario") and Marvin Castro's ("Marvin") (collectively, "the Castros") Second Cross-Motion for Summary Judgment (ECF No. 40), and Defendants Cordoba Enterprises, LLC ("Cordoba") and the Osbornes' Motion for Leave to File a Surreply (ECF No. 46). The Motions are ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2018). For the reasons outlined below, the Court will grant the Osbornes' Motion, grant the Castros' Motion, and deny Defendants' Motion.

# I. BACKGROUND[1]

On April 28, 2016, the Castros sued Cordoba Enterprises, LLC and the Osbornes.[2] (ECF No. 1). The three-count First Amended Complaint alleges violations of the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. §§ 201 et seq. (2018), Maryland's Wage and Hour Law (the "MWHL"), Md. Code Ann., Lab. & Empl. ["L&E"] §§ 3-401 et seq. (West 2018), and Maryland's Wage Payment and Collection Law (the "MWPCL"), L&E §§ 3-501 et seq. (West 2018). (Am. Compl. ¶¶ 32–43, ECF No. 7). The Castros seek unpaid overtime wages, liquidated damages, and attorney's fees and costs. (Id. at 7).

On March 30, 2018, the Court granted in part and denied in part Defendants' Motion for Summary Judgment. (Mar. 30, 2018 Mem. at 5, ECF No. 32). The Court also denied without prejudice the Castros' Cross-Motion for Summary Judgment. (Id.). As a result of the Court's ruling, only the Castros' claims under the FLSA and MWHL for the time period from December 2014 to September 2015 (the "Operative Time Period") remain. (Id.).

On June 8, 2018, the Osbornes filed a Motion for Partial Summary Judgment. (ECF No. 38). The Castros filed an Opposition on June 22, 2018. (ECF No. 42). On July 20, 2018, the Osbornes filed a Reply. (ECF No. 44).

---

[1] Unless otherwise noted, the facts outlined here are set forth in the Castros' First Amended Complaint (ECF No. 7). To the extent the Court discusses facts that the Castros do not allege in their First Amended Complaint, they are uncontroverted and the Court views them in the light most favorable to the nonmoving party. The Court will address additional facts when discussing applicable law.

[2] The Court set forth the facts of this case in its previous Memorandum. (See ECF No. 32). The Court discusses only facts relevant to resolving the pending Motions.

Also on June 8, 2018, the Castros filed a Second Cross-Motion for Summary Judgment. (ECF No. 40). Defendants filed an Opposition on June 29, 2018. (ECF No. 43). On July 20, 2018, the Castros filed a Reply. (ECF No. 45). Defendants filed a Motion for Leave to File a Surreply on August 3, 2018. (ECF No. 46). To date, the Court has no record that the Castros filed an Opposition.

## II. DISCUSSION

A. **Standard of Review**

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the nonmovant, drawing all justifiable inferences in that party's favor. Ricci v. DeStefano, 557 U.S. 557, 586 (2009); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158–59 (1970)). Summary judgment is proper when the movant demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a), (c)(1)(A). Significantly, a party must be able to present the materials it cites in "a form that would be admissible in evidence," Fed.R.Civ.P. 56(c)(2), and supporting affidavits and declarations "must be made on personal knowledge" and "set out facts that would be admissible in evidence," Fed.R.Civ.P. 56(c)(4).

Once a motion for summary judgment is properly made and supported, the burden shifts to the nonmovant to identify evidence showing there is genuine dispute of material

fact. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). Likewise, if the movant "demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify evidence that shows that a genuine dispute exists as to material facts." Hall v. Washington Metro. Area Transit Auth., 33 F.Supp.3d 630, 632 (D.Md. 2014). The nonmovant cannot create a genuine dispute of material fact "through mere speculation or the building of one inference upon another." Othentec Ltd. v. Phelan, 526 F.3d 135, 141 (4th Cir. 2008) (quoting Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985)).

A "material fact" is one that might affect the outcome of a party's case. Anderson, 477 U.S. at 248; see also JKC Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001) (citing Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001)). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248; accord Hooven-Lewis, 249 F.3d at 265. A "genuine" dispute concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. Anderson, 477 U.S. at 248. If the nonmovant has failed to make a sufficient showing on an essential element of her case where she has the burden of proof, "there can be 'no genuine [dispute] as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986).

**B.     Cross-Motions for Summary Judgment**

When the parties have filed cross-motions for summary judgment, the court must "review each motion separately on its own merits to 'determine whether either of the parties deserves judgment as a matter of law.'" Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) (quoting Philip Morris Inc. v. Harshbarger, 122 F.3d 58, 62 n.4 (1st Cir. 1997)). Moreover, "[w]hen considering each individual motion, the court must take care to 'resolve all factual disputes and any competing, rational inferences in the light most favorable' to the party opposing that motion." Id. (quoting Wightman v. Springfield Terminal Ry. Co., 100 F.3d 228, 230 (1st Cir. 1996)). This Court, however, must also abide by its affirmative obligation to prevent factually unsupported claims and defenses from going to trial. Drewitt v. Pratt, 999 F.2d 774, 778–79 (4th Cir. 1993). If the evidence presented by the nonmovant is merely colorable, or is not significantly probative, summary judgment must be granted. Anderson, 477 U.S. at 249–50.

**C.     Analysis**

    **1.     The Osbornes' Motion for Partial Summary Judgment**

The Osbornes maintain that the Castros have not produced any evidence that either of them is an "employer" under the FLSA or the MWHL,[3] and that they are therefore entitled to summary judgment on this issue. In response, the Castros point to deposition

---

[3] In their Motion, the Osbornes refer to the FLSA and the MWPCL. (Defs.' Mem. L. Supp. Mot. Partial Summ. J. ["Defs.' Mot."] at 5, ECF No. 38-1). The Court dismissed the Castros' MWPCL claims. (Mar. 30, 2018 Mem. at 5). Accordingly, the Court construes the Osbornes' Motion as moving for summary judgment on the Castros' FLSA and MWHL claims.

testimony from their former manager, Ken Kazanijian,[4] as evidence that each of the Osbornes is an "employer" under these statutes. The Osbornes counter that the Court should not consider Kazanijian's deposition testimony because it is not part of the record in this case and his deposition was taken after discovery closed in this case. The Court agrees with the Osbornes. As a threshold matter, the Court addresses whether it can consider Kazanijian's deposition testimony.

### a. Kazanijian's Deposition Testimony

Under Federal Rule of Civil Procedure 26, parties must disclose, "the name . . . of each individual likely to have discoverable information . . . that the disclosing party may use to support its claims." Fed.R.Civ.P. 26(a)(1)(A)(i). "The purpose of Rule 26(a) is to allow the parties to adequately prepare their cases for trial and to avoid unfair surprise." Awah v. CAPITAL ONE BANK, N.A., No. DKC 14-1288, 2016 WL 930975, at *6 (D.Md. Mar. 11, 2016) (quoting Russell v. Absolute Collection Servs., Inc., 763 F.3d 385, 396 (4th Cir. 2014)), dismissed sub nom. Awah v. Capital One Bank, 668 F.App'x 463 (4th Cir. 2016)). Rule 37(c)(1) provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." (emphasis added). The Court has "broad discretion to determine whether a party's non-disclosure of evidence is substantially justified or harmless." Spotswood v. Hertz Corp., No. RDB-16-1200, 2019 WL 498822, at *5 (D.Md.

---

[4] The parties spell this surname "Kazanjian" in their briefs, but the proper spelling is "Kazanijian." (Kazanijian Dep. at 1, Sept. 15, 2017, ECF No. 42-4).

Feb. 7, 2019) (citing Wilkins v. Montgomery, 751 F.3d 214, 222 (4th Cir. 2014)). When a party's discovery failure is not substantially justified or harmless, district courts have "particularly wide latitude . . . to issue sanctions under Rule 37(c)(1)." Awah, 2016 WL 930975, at *6 (quoting Saudi v. Northrop Grumman Corp., 427 F.3d 271, 278–79 (4th Cir. 2005)).

Here, the Castros did not disclose that Kazanijian was likely to have discoverable information that they might use to support their claims, even though Cordoba propounded discovery requesting that they "[i]dentify all persons who are likely to have personal knowledge of any fact alleged in the complaint[ ] and state the subject matter of the personal knowledge possessed by each person." (See Osbornes' Reply Ex. A at 2, ECF No. 44-1; Id. Ex. B at 2, ECF No. 44-2). In addition, the Osbornes correctly note that Kazanijian's deposition is part of the record in a different case, Estrada v. Ecology Services Refuse and Recycling, LLC, GLR-17-496 (D.Md. closed Jan. 31, 2019), not this case, (see Kazanijian Dep. at 1, Sept. 15, 2017, ECF No. 42-4). Because the Castros did not identify Kazanijian as a witness and submitted his deposition testimony for the first time in opposition to the Osbornes' Motion, the Osbornes were unable to question Kazanijian regarding the Osbornes' roles at Cordoba. The Castros offer no explanation for their failure to identify Kazanijian as a potential witness, nor do they argue that their failure to do so was harmless. The Court, therefore, concludes that the Castros' failure to disclose Kazanijian as a witness in this case is not substantially justified or harmless. Awah, 2016 WL 930975, at *6. As a result, the Court will exercise its discretion to impose sanctions under Rule 37(c)(1) and strike Kazanijian's deposition testimony. See id. (quoting

Blankson-Arkoful v. Sunrise Senior Living Servs., Inc., No. JFM-09-2291, 2010 WL 2719877, at *1 (D.Md. July 8, 2010), aff'd sub nom. Blankson-Arkoful v. Sunrise Sr. Living Servs., Inc., 449 F.App'x 263 (4th Cir. 2011) (striking affidavits and evidence that the plaintiff attached to his opposition to the defendant's motion for summary judgment because they were not produced during discovery). The Court next considers the merits of the Osbornes' Motion.

### b. "Employer"

The FLSA premises liability upon the existence of an employer-employee relationship. Kerr v. Marshall Univ. Bd. of Governors, 824 F.3d 62, 83 (4th Cir. 2016) (citing Benshoff v. City of Virginia Beach, 180 F.3d 136, 140 (4th Cir. 1999)). The employee has the burden of pleading and proving that relationship. Id. (citing Benshoff, 180 F.3d at 140). The FLSA defines "employer," in relevant part, as "any person acting directly or indirectly in the interest of an employer in relation to an employee." Id. (quoting 29 U.S.C. § 203(d)).[5] The United States Court of Appeals for the Fourth Circuit has adopted the "economic reality test" to determine whether an employer-employee relationship exists. Id. (citing Schultz v. Capital Int'l Sec., Inc., 466 F.3d 298, 304 (4th Cir. 2006)). The economic reality test also determines whether a person is an "employer" under the MWHL. Mould v. NJG Food Serv. Inc., 37 F.Supp.3d 762, 775 (D.Md. 2014) (citing Newell v. Runnels, 967 A.2d 729, 770 (Md. 2009)); see also Alvarez-Soto v. B. Frank Joy, LLC, 258 F.Supp.3d 615, 631 (D.Md. 2017) ("Under the MWHL . . . , courts use the same

---

[5] The MWHL similarly defines "employer" as "a person who acts directly or indirectly in the interest of another employer with an employee." L & E § 3-401(b).

'economic reality' test applicable to the FLSA to determine whether a defendant is an 'employer.'" (citations omitted)).

Under the economic reality test, the Court considers four factors. These factors are whether the alleged employer: (1) "had the power to hire and fire the employees"; (2) "supervised and controlled employee work schedules or conditions of employment"; (3) "determined the rate and method of payment"; and (4) "maintained employment records." Kerr, 824 F.3d at 83 (quoting Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 139 (2d Cir. 1999)). No one factor is dispositive. Id.

In this case, the record is devoid of evidence of any of the four factors with regard to the Osbornes. And, as the Osbornes point out, the Castros both testified at their depositions that they never interacted with either of the Osbornes, nor do they know what role each of them played at Cordoba, beyond Peter being one of the owners. (See Marvin Dep. 138:18–139:8, May 8, 2017, ECF No. 38-2; Mario Dep. 108:8–109:2, May 8, 2017, ECF No. 38-3). Thus, the Court concludes that no genuine dispute of material fact exists regarding whether each of the Osbornes is an "employer" under the FLSA and the MWHL. Accordingly, the Court will grant the Osbornes' Motion.

### 2. The Castros' Cross-Motion for Summary Judgment

The Castros move for summary judgment on liability and minimum damages owed under their FLSA and MWHL claims for the Operative Time Period. They maintain that there are no genuine disputes of material fact that the Castros worked overtime hours and that Cordoba failed to compensate them properly for those hours. The Castros further contend that, based on Cordoba's Weekly Reports and payroll records, no genuine dispute

of material fact exists regarding the minimum amount of wages they are owed. Defendants assert, based on a declaration from Christina Stanley (the "Stanley Declaration"), (Stanley Decl., ECF No. 43-1), who was responsible for processing Cordoba's payroll during the Operative Time Period, that the Castros erroneously rely on Cordoba's Weekly Reports and payroll records. According to Stanley, the Weekly Reports and payroll records do not accurately reflect the number of hours the Castros worked in a week because they were paid a day rate—a flat rate per day regardless of the number of hours worked. The Castros counter that the Court should not consider the Stanley Declaration because it asserts, for the first time, that Cordoba paid the Castros a day rate, which contradicts evidence in the record. The Court agrees with the Castros.

### a.     Motion for Leave to File a Surreply

As a threshold matter, the Court addresses Defendants' Motion for Leave to File a Surreply, which is unopposed. "Unless otherwise ordered by the court, surreply memoranda are not permitted to be filed." Local Rule 105.2(a) (D.Md. 2018). The Court may permit surreplies "when the moving party would be unable to contest matters presented to the court for the first time in the opposing party's reply." Khoury v. Meserve, 268 F.Supp.2d 600, 605 (D.Md. 2003) (citing Lewis v. Rumsfeld, 154 F.Supp.2d 56, 61 (D.D.C. 2001)). Here, in their Reply the Castros cite to evidence in the record that they did not initially cite in support of their Cross-Motion, but they point to this evidence to address Defendants' assertion in their Opposition that the Castros were paid a day rate, and not an annual salary. The Castros, therefore, merely respond to arguments and evidence

Defendants raised in their Opposition. Accordingly, the Court will deny Defendants' Motion. The Court next addresses whether it will consider the Stanley Declaration.

      **b.**      **The Stanley Declaration**

The Court declines to consider the Stanley declaration for at least two reasons. First, it contains information that Defendants could have produced during discovery that was not included in Defendants' discovery responses—namely, that the Castros were compensated at a day rate. (See Stanley Decl. ¶ 3). Second, it directly contradicts prior statements Defendants made under oath in their discovery responses.[6] For example, in Cordoba's Supplemental Answers to Plaintiffs' First Set of Interrogatories, Cordoba indicates that Marvin was paid "$52,000/year from date of hire until August 28, 2015." (Ans. No. 8 Def.'s Suppl. Ans. Pls.' 1st Set Interrogs., ECF No. 45-2). Likewise, Cordoba indicates that Mario was paid "$60,000/year from April 5, 2014 through December 12, 2014" and "$63,000/year from December 13, 2014 to August 28, 2015." (Id.). These responses indicate that Cordoba paid the Castros an annual salary. Further, in at least one instance, Cordoba compensated Mario for four hours worked in addition to his salary, which

---

[6] The Stanley Declaration directly contradicts Cordoba's Supplemental Answers to Plaintiffs' First Set of Interrogatories, which indicate that the Castros were paid an annual salary. Under the sham affidavit doctrine, "a party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement (by, say, filing a later affidavit that flatly contradicts that party's earlier sworn deposition) without explaining the contradiction or attempting to resolve the disparity." Ervin v. JP Morgan Chase Bank NA, No. GLR-13-2080, 2014 WL 4052895, at *2 (D.Md. Aug. 13, 2014) (quoting Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 806 (1999)). Although the Court does not apply the sham affidavit rule here, the Court notes that Defendants do not offer an explanation for the contradiction, nor do they attempt to resolve the disparity between their Supplemental Answers to the Castros' Interrogatories and the Stanley Declaration.

contradicts Defendants' assertions that the Castros were compensated at a day rate. (Pls.' Cross-Mot. Ex. B at 23, ECF No. 40-2).[7] Also, for each of the Castros, the July 17, 2015 payroll record calls "Overtime" what is termed the "Hourly Rate" in the rest of the records and compensates them at a time-and-a-half rate, (id. at 14 (Mario); id. at 30 (Marvin)), which is not how day-rate overtime is calculated.[8] Thus, the Court will not consider the Stanley Declaration when ruling on the Castros' Cross-Motion.

    c.    **FLSA & MWHL Claims**[9]

The FLSA requires employers to pay an employee who works more than forty hours in a week one-and-a-half times the employee's regular rate of compensation. 29 U.S.C. § 207(a)(1) (2018). Under the FLSA, the employee has the initial burden of establishing "the hours he claims to have worked and the work he claims to have performed for which he was not paid." McLaughlin v. Murphy, 436 F.Supp.2d 732, 737 (D.Md. 2005), aff'd, 247 F.App'x 430 (4th Cir. 2007); see Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 686–87 (1946). Where, as here, the employer does not have exact records of the employee's hours, an employee carries his burden "if he proves that he has

---

[7] Citations to Exhibit B to the Castros' Cross-Motion refer to the pagination the Court's Case Management and Electronic Case Files ("CM/ECF") system assigned.

[8] Day-rate overtime is determined by "totaling all the sums received at such day rates or job rates in the workweek and dividing by the total hours actually worked" to get the employee's regular hourly rate, and then adding extra half-time pay to the regular hourly rate "for all hours worked in excess of [forty] in the workweek." 29 C.F.R. § 778.112 (2019).

[9] The MWHL's provisions governing overtime compensation are "parallel to the same right under the FLSA." Veney v. John W. Clarke, Inc., 28 F.Supp.3d 435, 441 (D.Md. 2014). As a result, the Castros' MWHL claims "stand or fall on the success of their claims under the FLSA." Archer v. Freedmont Mortg. Corp., No. GLR-12-1099, 2012 WL 5193828, at *1 n.1 (D.Md. Oct. 18, 2012).

in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." Anderson, 328 U.S. at 687. The FLSA does not "mandate that a plaintiff prove each hour of overtime work with unerring accuracy or certainty." Pforr v. Food Lion, Inc., 851 F.2d 106, 108 (4th Cir. 1988). Once the employee has sustained his burden, the burden then shifts to the employer to "negate the inference" drawn from the plaintiff's evidence. Whittaker v. David's Beautiful People, Inc., No. DKC 14-2483, 2016 WL 429963, at *11 (D.Md. Feb. 4, 2016) (citing McLaughlin, 436 F.Supp.2d at 737). If the employer fails to negate the inference and it does not have accurate records, the Court "may then award damages to the employee, even though the result be only approximate." Anderson 328 U.S. at 688; see Donovan v. Kentwood Dev. Co., Inc., 549 F.Supp. 485–86 (D.Md. 1982) ("Where plaintiff has demonstrated that some work was performed for which the employee was improperly compensated, there is a right to recovery, even though the amount may be uncertain and damages difficult to calculate." (first citing Hodgson v. Ricky Fashions, Inc., 434 F.2d 1261, 1263–64 (5th Cir. 1970); and then citing Mitchell v. Mitchell Truck Line, Inc., 286 F.2d 721 (5th Cir. 1961))).

Here, the Castros have met their burden of establishing a reasonable inference that Cordoba did not properly compensate them for overtime hours worked on Saturdays during the Operative Time Period. Cordoba's Weekly Reports and payroll records demonstrate that, in addition to a forty-hour work week, the Castros worked nearly every Saturday during the Operative Time Period. (See Pls.' Cross-Mot. Exs. A & B, ECF Nos. 40-1, 40-2). The Weekly Reports and payroll records further demonstrate that the Castros were only

13

paid their regular hourly rate for overtime hours worked on all but one of those Saturdays. (See Pls.' Cross-Mot. Exs. A & B, ECF Nos. 40-1, 40-2). Although the Court previously observed that "[t]here is scant evidence" in the record regarding the precise hours Castros worked during the Operative Time Period, the Court further observed that Cordoba's payroll records reflect that the Castros "were salaried, worked Saturdays, and were compensated for working on Saturdays." (Mar. 30, 2018 Mem. at 5). In addition, in their Answers to Interrogatories, the Castros state that they "regularly started [work] at 5:30 a.m. and worked until 8:00 p.m., and sometimes until 8:30 p.m. or 9:00 p.m." and that they "worked every Saturday" during the Operative Time Period. (Mario's Ans. No. 12 Def. Cordoba's 1st Set Interrogs., ECF No. 30-4 at 7–8; Marvin's Ans. No. 12 Def. Cordoba's 1st Set Interrogs., ECF No. 30-4 at 24). So, while the Castros have not established the exact number of overtime hours they worked, they are not required to do so to satisfy their burden. Anderson, 328 U.S. at 687; Pforr, 851 F.2d at 108.

The evidence in the record demonstrates the minimum number of overtime hours worked based on the hourly rate each of the Castros was paid every week in excess of their weekly salary. The evidence in the record also reflects that Cordoba paid the Castros their regular hourly rate, and not time-and-a-half for overtime hours worked. (See Pls.' Cross-Mot. Ex. B). For example, Mario's payroll record for January 2, 2015 reflects that Cordoba paid him a weekly salary of $1,211.54, which is consistent with an annual salary of approximately $63,000.00, and paid him $242.32 for eight additional hours at an hourly rate of $30.29 per hour. (Id. at 3). This was Mario's regular hourly rate; his overtime rate

14

was $45.44.^{10}$ Likewise, Marvin's payroll record from January 16, 2015 shows that Cordoba paid him a weekly salary of $1,000.00, which is consistent with an annual salary of $52.000.00, and paid him for eight additional hours at an hourly rate of $25.00 per hour. (Id. at 20). This was Marvin's regular rate; his overtime rate was $37.50.^{11} Thus, from the evidence in the record, the Court can reasonably infer that the Castros worked overtime most Saturdays during the Operative Time Period and were not properly compensated for those overtime hours on all but one of those Saturdays.

Next, the burden shifts to Cordoba to negate the inference. The payroll records, though they do not establish the exact number of hours the Castros worked in a given week, reflect the number of hours the Castros worked on Saturdays and the compensation they received for each Saturday worked. Defendants do not point to any evidence in the record to contradict these documents. Instead, they attempt to dispute the Castros' interpretation of the Weekly Reports and payroll records through statements in the Stanley Declaration. Because the Court declines to consider the Stanley Declaration and Defendants do not otherwise point to evidence in the record that creates a genuine dispute of material fact regarding whether the Castros worked overtime on Saturdays and whether Cordoba improperly compensated them for their overtime hours worked, Defendants fail to negate the reasonable inferences the Castros established.

In sum, the Court concludes that there is no genuine dispute of material fact regarding whether the Castros worked overtime on Saturdays during the Operative Time

---

[10] $1,211.54 ÷ 40 = $30.29 x 1.5 = $45.44 per hour.
[11] $1,000.00 ÷ 40 = $25.00 x 1.5 = $37.50 per hour.

Period and that they were not compensated at time-and-a-half for the overtime they worked. Accordingly, the Court will grant the Castros' Motion on liability and minimum damages. The Court next considers how to measure the Castros' minimum damages.

### d. Minimum Damages

The Castros maintain that the Court should use the FLSA regulation defining overtime for salaried and hourly employees, 29 C.F.R. § 778.113 (2018), to calculate minimum damages owed. Defendants insist that the Court should employ the FLSA regulation governing overtime for day-rate pay, 29 C.F.R. § 778.112. Because the Court declined to consider Defendants' evidence that the Castros were day-rate employees and the evidence in the record reflects that the Castros were salaried employees during the Operative Time Period, the Court will employ § 778.113 to calculate their damages.

#### i. Mario

As noted above, Mario's regular hourly rate was $30.29 and his overtime rate was $45.44. Because Cordoba paid Mario at his regular hourly rate for overtime hours worked on Saturdays, he is owed the additional half-time of $15.15 per hour for overtime hours worked on those days. Relying on Cordoba's payroll records for the Operative Time Period, Mario worked approximately 292 overtime hours on Saturdays during that time period, (Pls.' Cross-Mot. Ex. B at 2–16), and was paid time-and-a-half for only eight of those hours, (id. at 14). Thus, the Court concludes that Cordoba is liable to Mario for a

minimum of $4,302.60[12] in unpaid overtime wages for Saturdays worked during the Operative Time Period.

### ii. Marvin

As noted above, Marvin's regular hourly rate was $25.00 and his overtime rate was $37.50. Because Cordoba paid Marvin at his regular hourly rate for overtime hours worked on Saturdays, he is owed the additional half-time of $12.50 per hour for overtime hours worked on those days. Relying on Cordoba's payroll records for the Operative Time Period, Marvin worked approximately 280 overtime hours during that time period, (id. at 18–32), and was paid time-and-a-half for only eight of those hours, (id. at 30). Thus, the Court concludes that Cordoba is liable to Marvin for a minimum of $3,400.00[13] in unpaid overtime wages for Saturdays worked during the Operative Time Period.

### III. CONCLUSION

For the foregoing reasons, the Court will grant the Osbornes' Motion for Partial Summary Judgment (ECF No. 38) and the Castros' Second Cross-Motion for Summary Judgment (ECF No. 40). The Court will also deny Defendants' Motion for Leave to File a Surreply (ECF No. 46). A separate Order follows.

Entered this 28th day of March, 2019.

/s/
George L. Russell, III
United States District Judge

---

[12] 292 overtime hours − 8 hours compensated at time-and-a-half = 284 hours x $15.15 = $4,302.60.

[13] 280 overtime hours − 8 hours compensated at time-and-a-half = 272 hours x $12.50 = $3,400.00.